Before we begin our official proceedings today, we have something that's a lot more enjoyable and interesting. And for that purpose, I'll turn it over to Judge O'Malley. Thank you, Judge Proce. I'm here today with the privilege of moving the admission of three of my current law clerks. First, I move the admission of Benjamin Allen Herber, who's a member of the Bar in Good Standing, of the highest court of the state of California. Ben has also been with me for a while. He started with me on the district court and lived through part of the confirmation process and the transition. And he's finally ready to leave me behind. His mother is here today. And so she's probably going to see him being sworn in. I also move the admission of Benjamin T. Hickman, who's a member of the Bar in Good Standing of the highest courts of Virginia, Maryland, and the District of Columbia. Ben has been with me for a year, but before that, in addition to practicing law, he clerked for one of my closest friends on the district bench, Jennifer Kaufman. And Ben has had the good graces to allow us to call him Hick throughout the course of the year, even though no one else had ever nicknamed him that, because I could not deal with two separate Bens in the same chamber. We'll see if he ever lives that name down. And his wife is here with him today. I also move the admission of Philip Charles Sternhau, who is a member of the Bar in Good Standing of the highest court of New York. Philip practiced for many years before coming to work for me. And we have many friends in common. Is Rebecca here, too? Is she not here? Oh, there she is. His wife is also here, but she's hiding in the back of the room. And Philip is not leaving. He's here till March, but he just wanted to get in on the action with the other two that were being sworn in. In fact, Philip was a member of the Bar and withdrew as a member of the Bar so he could be re-sworn in as a member of the Bar with his co-clerks. I have knowledge of all of their credentials. And this is very hard for me, because at least as the two of these gentlemen, it means that they're going to be leaving me soon. And I hate this time of year, but I know that they will accord themselves appropriately, and they will serve as wonderful members of this Bar. So I'm going to ask you to be sworn in by the clerk. Mr. Horvilley, can you come to the square? Well, first I'm going to grant the motion. Don't take it under advisement, please. Will you grant the motion, please? I do. I do grant the motion. All right, now you can be sworn in. Raise your right hand. You swear or affirm that you comport yourselves as attorneys and counselors of this court, uprightly and according to law, and that you support the Constitution of the United States of America. I do. Congratulations, and welcome to the Bar. Pleasure to have you here. Congratulations. Congratulations. OK. OK. First case this morning is 2011-3232, Young v. Hodge v. Mr. Solomon. Whenever you're ready. Good morning, Your Honors, and may it please the court. There are two primary reasons this court should reverse the arbitrator's decision below. First, Mr. Young's due process rights were violated when the deciding official engaged in an improper ex parte investigation, an issue the arbitrator all but ignored, along with this court's decisions in Stone and Ward in his decision. Second, although the agency concedes that it did not charge Mr. Young for making a threat, the agency nevertheless removed him for making a threat under offense number six from the agency's table of penalties. With respect to the due process issue, the arbitrator provided but two erroneous explanations for rejecting Mr. Young's due process argument. The first thing the arbitrator said, disregarding this court's decisions in Stone and Ward, was that there was no due process violation because Mr. Young was given, quote, as much time as he needed before the arbitrator, and, quote, was not denied a full disclosure by the employer when requested. Of course, however, this court's decisions in Stone and Ward. Well, it seems to me this is somewhat different than Stone and Ward, at least recalling Stone. There, it was a matter of the deciding official have considered charges for conduct that the employee never had a chance to rebut or respond to. The type of information that she considered during her consideration of the deciding official, that is, seems to me of a different nature and character than the information in the kind of disclosure in Ward that we sent it back for purposes of evaluating, right? A few responses. Yes, Your Honor, it was different in the way that Your Honor suggested. But first, that's not a decision that this court should make in the first instance. The other difference with Ward in that regard, and then I'll let you finish, sorry to interrupt, is that the arbitrator did consider the impact of that and analyzed it, which is essentially what all we wanted in Ward was send it back and let the board evaluate it. Well, that's already been done in this case. So what good would it, even if we concluded this was the same as Ward and we should send it back, hasn't anybody done the analysis? No, not at all, because in the test that was articulated by this court in Stone and Ward is that the arbitrator has to consider whether the newly gathered information is new and material, whether the ex parte information that was gathered was new and material. And that was not done by the arbitrator. The arbitrator, in this case, never once addresses the impact of the ex parte information. And that's if it's new and material, then your position is it has to be disregarded entirely? If on remand the arbitrator were to apply the correct test and conclude that the information was new and material, triggering a due process violation, then the entire process has to start over from the beginning, because this court has held that a harmless error analysis doesn't apply when there's a due process violation. But there are at least five or six different places in the record that demonstrate that the new information, the ex parte information that the deciding official gathered was critical. So for example, at joint appendix 193, the deciding official testifies that, quote, Mr. Davis's statements, in my mind, were the most critical statements. And later, Ms. Wadhams, the deciding official, says that she interviewed other individuals that were critical, quote, to her decision. And that as a result of her ex parte investigation, she believed Mr. Davis was no longer credible, clearly implying that before she engaged in her ex parte investigation, Mr. Davis, the exculpatory witness for our client, Mr. Young, that Mr. Davis was credible. And then she does the ex parte investigation. And then we had an arbitration proceeding, and he was aware of all of this. And there was four days of testimony and cross-examination and consideration by the arbitrator. And the arbitrator weighed all of these factors. And at the end of the day, he made his decision based upon credibility and based on an extensive review of the evidence and the history. That's true. Why isn't that sufficient? Because that goes to the merits of the decision. But the fact that the arbitrator concludes that Mr. Young engaged in the conduct of which he was accused has nothing to do with the threshold question of whether there's a due process violation. The government cannot cure the due process violation with the Harmel's error test, let alone by pointing to the ultimate outcome that was in its favor and saying that because we won, therefore there's no due process violation. So what are you suggesting? That it goes back to the arbitrator on remand or to the deciding official, and the deciding official has to look at the entire record again, but can't talk to Mr. Young and have the other person and forget that she ever spoke to him? I mean, I don't understand what you're asking. What this court said in Ward and Stone is that the proper course is for a remand, a reversal in remand, for the decision to go back to the arbitrator, for the arbitrator to consider whether there was a due process violation. And even if there was not a due process violation, to then consider whether the ex parte investigation violated agency regulations, in which case that would then be subject to a Harmel's error test. But as we indicated in our- Didn't the arbitrator already- that was my first question. Didn't he raise this due process allegation before the arbitrator? And didn't the arbitrator already consider whether or not it rose to a level which it would require a different result? No. Hadn't he already done that? Not even close, Your Honor. All he did was he acknowledged that there was a due process argument made. But as I indicated when I began, there were only two things that the arbitrator said in holding that there was no due process problem. The first was that Mr. Young was given as much time as he wanted before the arbitrator to address the allegations. That's insufficient, because the test under Ward and Stone focuses on the deciding official's conduct. And the second thing the arbitrator said is that Mr. Young received a full disclosure by the employer when requested. Well, first of all, as a factual matter, it's simply wrong that he ever received to the extent that what the arbitrator meant was that Mr. Young received the ex parte information. That is simply not true. And I'm happy to point to the places in the record where the deciding official admits that she never provided him with that information. But more importantly, I guess, is that it doesn't even make any sense that you would get a full disclosure by the employer when he requested. I mean, he didn't know that she engaged in the ex parte investigation until he was already removed. So the idea that the agency can cure the due process violation by saying that, well, if he had asked for the information, we would have given it to him, is patently insufficient under this court's decisions. So where you have a situation in which the decision is made based, at least in part, as the deciding official concedes on this ex parte investigation, you're saying that it's not enough that later, if he learns during the course of the arbitration process, that this ex parte investigation occurred? That's correct. And that's the whole point of this court's decisions in Ward and Stone in terms of remanding. And this court spent some time in those decisions explaining why a later opportunity to address the information is insufficient. That due process requires that Mr. Young, in this case, be allowed to make his arguments in the first instance to the deciding official. Do you acknowledge, however, that the kind of information we're talking about and the kind of communications here are at least significantly different from Ward? They are different than Ward, but there have been other cases, at least in one unpublished. Ward is kind of a classic, where you consider other conduct. I mean, a classic no-no, that the deciding official has a charge, the grievance of the appellant knows what he's being charged with and gets to respond. And the deciding official then goes off and finds this other conduct, which, admittedly, she relied on in taking the action. That's classic. That happens on occasion. That's always frowned upon and rejected. This is substantially different, is it not? As we point out more extensively in our reply brief, Stone and Ward hold that it's not just the conduct that can't be gathered ex parte or new allegations, which is something the government repeatedly says. There were no new allegations developed. But what Stone and Ward say is that even if what is gathered ex parte is new evidence, that that triggers a due process violation. And that is consistent with the HUD Adverse Actions Handbook, which says that, quote, the decision must be based on the evidence relied upon to support the proposal and not on ex parte communication. That's clear. It doesn't mention allegations or conduct. It says evidence. And all the Adverse Handbook does is create a rule similar to the regulation at 5 CFR that we rely upon that says you cannot have an ex parte investigation. So the fact that it's not the same as Ward is not what's dispositive in light of this court's clear holdings that new evidence can trigger the due process violation. And here, there's no dispute whatsoever that the deciding official gathered ex parte information and that she relied upon it and said it was critical in her outcome in removing Mr. Young. And to the extent the government will argue and has argued that the reason why a due process violation isn't triggered here is because there was no, quote, undue pressure, this court in Ward explicitly rejected that as the touchstone test for a due process violation. Well, in addition to the other evidence, was there anything about his behaviors that fell outside this one incident that was gathered in the ex parte communications? In addition to? In addition to the evidence as it relates to Mr. Davis, for instance. Well, part of that is unclear, Your Honor, because there were a number of witnesses that the deciding official admitted she interviewed. I believe there were five other witnesses that were interviewed. And the contents of their interviews were never disclosed to Mr. Young. So to the extent that anything in there wasn't provided to him and she relied upon it, then that would also trigger a due process violation. And she, the deciding official, Ms. Wadhams, in fact, calls those other individuals. Aside from Mr. Davis, the exculpatory witness, Ms. Wadhams testifies that the other witnesses were, quote, were critical. So the other witnesses she interviewed, she said interviewing those witnesses were critical to my decision in removing Mr. Young. And Mr. Young never had notice of those witnesses. Are you saying that there's other witnesses that were interviewed but not identified? They were correct, Your Honor. They were never identified. Or Ms. It's not that Mr. Young wasn't aware of the other witnesses as a general matter, as being employees of HUD or colleagues. But they were never identified to Mr. Young in terms of her investigatory process. She never did what she was required to do, which is to say, as part of my decision, I will be interviewing these five individuals. You have a right to either be on the phone with counsel, or I will provide you my notes after the interview. And you may have the opportunity to respond to the specific things they've said in the interviews. That never occurred. And in fact, what's worse. So really, the problem here is that Mr. Young never had a chance to respond to the new information that was gathered during the ex parte investigation. Yes, Your Honor. Yes, Your Honor. And in fact, one of the government employees that was consulting with Ms. Wadhams, the deciding official, said that they didn't believe that the agency was allowed to disclose the information to Mr. Young. That's at Joint Appendix 171. And the transcript page is at 340. That Ms. Wadhams was not believed that she was not allowed to disclose the information to Mr. Young. And some of those interviews, in fact, include discussions about those employees' generalized attitudes toward Mr. Young? I'm sorry, Your Honor? Did some of those interviews include those employees giving their general attitudes toward Mr. Young outside of the context of this charge? Correct. They were not, as we would say, percipient witnesses to the event. In fact, the only percipient witness to the event was one accusatory witness, Mr. Dart. Other than that, the other witnesses were kind of general character witnesses at best. So you call them witnesses, but they weren't witnesses to the factual event that led to the charge. And if anything, Your Honor, that makes it worse. The fact that you didn't have notice of four or five independent individuals just discussing Mr. Young's general behavior or past interactions, meaning to the extent that they weren't probative, it doesn't mean that it was harmless. It means it was harmful. The deciding official should have at least given Mr. Young an opportunity to address the fact that she was discussing this case with additional witnesses. Your interior rebuttal, you want to sit down now, Ms. Davis? Thank you, Your Honor. Government, thank you. Ms. Jones? Good morning, Your Honors. May it please the Court. This case is very different than Ward and Stone. The communications that were provided were completely different, as the Court suggests in some of his questions. The information that came out of them did not constitute either new evidence in support of the charge or new evidence in support of the penalty. How can you say that when some of these witnesses actually said, oh, yeah, I didn't see what happened, but I don't like this guy. And he makes me uncomfortable, or I don't want to work with him. How can you say that that is not new and material information that at least would go to the penalty? Well, the evidence that, first of all, let me point out that the evidence, the specific evidence that Mr. Young is arguing on appeal constituted improper ex parte communication was the interview with Mr. Davis, because that was what the deciding official said impacted on her credibility determination with respect to Young. It is, of course, Mr. Young's burden to demonstrate that there's been an error, due process error, or otherwise. And that is the evidence he's chosen. Well, that's not the only thing they point to. That's not the only thing they point to in their briefs. I mean, it's much broader than that. They do point to that as a critical piece, because somehow that led to the supposed credibility assessment. But they go into great detail about all the other witnesses that were interviewed and the disclosures that were not made. Not really until their reply brief when they mention that there were other witnesses interviewed. But there's really not specific information that was really the focus of the appeal. But the import of the ex parte communication arises out of the due process guarantee of notice. And in this case, the question is, what was Mr. Young told in the proposal notice? He was told, in fact, that Mr. Darvid claimed he had made this statement. That's what he was defending against. He was told that there were employees who felt threatened by him coming into the office, that there was a fearfulness about him coming himself. He was given notice of what he needed to defend against. The additional evidence that came through Mr. Davis' interview was information Mr. Young already knew, because he was with Mr. Davis during the entire break. So there was nothing new that came in through the interview with Mr. Davis that Mr. Young didn't already know. And in that sense, it was also completely different than the zone of work. So are you suggesting a harmless error analysis with respect to the due process? Well, no, absolutely not. The due process, this court has made it very clear that if there's a due process violation, that a harmful error analysis does not apply. However, I am suggesting that this is not a due process violation. That these investigatory interviews fall directly within the court's decision in blank versus Department of the Army. There, the court said, interviews that do no more than confirm and clarify what the employee has already been notified of in the proposal are not due process violations. And Mr. Young was told in the proposal notice everything that the deciding official actually relied on, which was the charge, making an aggressive or intimidating statement, and the fact that other employees were fearful. But the due process claim here is not, I don't think, whether he was notified in a broad and general sense what the charges were. And there's a problem with that as well in the case. But isn't it that the due process claim, doesn't it go to whether Mr. Young was able to adequately address the new information that was developed? It's whether there was new information that he didn't have a chance to respond to that, and I would argue that it only is new information that he either is unaware of or that goes to the charges, some additional evidence that the employer is relying on to prove the charge or the penalty. But in this case, the new information that Mr. Young appears to be basing his appeal on, as far as I can tell, is the information provided by Mr. Davis. The additional information beyond the time that they were standing in the hall. But that information wouldn't be information that Mr. Young wasn't aware of. He was with Mr. Davis. Mr. Young is the one that put forward Mr. Davis' affidavit, right? Yes, he submitted both in his own affidavit and Mr. Young. So he obviously was aware of what Mr. Davis was saying, at least in the statement. What if the decided official hypothetically calls up Mr. Davis, and he recants? And he says, no, I lied in that statement that I gave to Mr. Young. I absolutely was not with him. In fact, I heard him say this to, I forget the names of the characters in this case. Sorry. I heard him make this threatening, intimidating statement to the witness in the other case. Is that sufficient to be new information or new evidence that Mr. Young should be able to know about and respond to? I would say in the context of this particular case, no. Because Mr. Young's own statement is that he was with Mr. Davis the entire time. So he would presumably know everything that Mr. Davis did or said. Well, what he doesn't know, he may know the underlying, at least the respective beliefs. But what he doesn't know is that there's another person who's giving a different story than him. And that's relevant, is it not, to the proceeding and his right to cross-examine or his right to be aware of the kind of information that the deciding official is basing her decision on. Certainly, if Mr. Davis came in and gave additional evidence against Mr. Young, saying he made this statement, that would be additional evidence of the type that the agency is relying on to prove its charge. And therefore, I would agree in that instance, Mr. Young would be entitled to be notified of that. But that's not what happened in this case. But how is that different from what actually happened here, which is that there was additional information that the charging official said that she used to then decide that it created a credibility problem. And then she used that to totally discount Mr. Davis' affidavit. So you've got Mr. Young walking in there, knowing that Mr. Davis was with him, at least they were in the same vicinity, knowing that Mr. Davis was going to say he never did it, that he never heard anything. And instead, the deciding official has already said, oh no, Mr. Davis' testimony is completely out, because I have discredited it based on new information that I obtained. I would submit it's entirely different, Your Honor, because Mr. Davis came in and reiterated everything he said in his initial affidavit. He then expanded upon it. And in his expansion, the deciding official's perception was that he had not been fully candid in his first one. So Mr. Davis didn't come in, as Judge Probst suggested, and change the story and say, I wasn't with Mr. Young. Mr. Young did say that I lied earlier. He continued to be a witness in favor of Mr. Young. He continued to say, I was with Mr. Young for this time. He did not say it. I was with Mr. Young even after that time. However, when he added the additional information in his original affidavit and Mr. Young's original affidavit, strongly implied to the deciding official, and I would submit to anyone on a reading, that they spent the entire break in the foyer right outside the hearing room. His additional evidence didn't contradict anything that he or Mr. Young had said. However, it contradicted that implication that they spent the entire break there. And in that, the deciding official decided that he was less than candid originally. Alleged contradiction. You say repeatedly that we can't reassess credibility determinations. But isn't our case all very clear that we do not reassess demeanor-based credibility determinations? But when a credibility determination is based solely on a citation to a fact that we ultimately conclude is not supportable, then we do have the authority to say that that credibility determination was not properly made. Isn't that right? That is correct, Your Honor. But I would also submit that this court has recognized that when a trier of fact does have live witnesses testifying before him or her, then the credibility determinations, there is an implicit recognition that they are partially demeanor-based, even if the trier of fact doesn't actually spell out in the decision that it was Is that why we should pay attention to due process claims? Because of the discretion that we give to a arbitrator's credibility determinations? And in this instance, Mr. Young had no way of knowing that the credibility of Mr. Davis had been drawn into question until after the decision had been admitted. But Mr. Young was very aware of what Mr. Davis was doing, what he and Mr. Davis were doing during that entire break, because they continued to maintain that they were together, and yet they both, in their original affidavit, stated only that they were the foyer. So what Mr. Young's real objection is that he wasn't aware of what was going on inside the mind, of how this was affecting inside the mind of the deciding official. But that's always going to be the case. Well, he wasn't able to challenge the credibility determination of the deciding official. It's a deciding official who's making a decision as to credibility, but Mr. Young doesn't even know that that's going on. And I would submit that he's not necessarily entitled to know the thought process about the credibility determination. He's entitled to know the information. And the information is information that Mr. Young testified to at the arbitration was true. So it wasn't that he was going to try to dispute what Mr. Davis said. He was with Mr. Davis. It was just the fact that both of them, Mr. Young and Mr. Davis, both were, at least in the deciding official's mind, not completely candid by only recounting the part about being in the foyer. So it's not so much that Mr. Young was going to come in and dispute the additional information that Mr. Davis provided and say, he's wrong. We didn't go back to his cubicle. I didn't wander around while he was checking email. His testimony, in fact, was exactly to that effect. What he objects to is the effect that the change between the original affidavits and the expansion had in the deciding official's mind. But she's entitled to evaluate it that way. And he's not necessarily entitled to have advance notice of her evaluation. Didn't the deciding official also interview additional people like Janelle Bannister and the statements that were made by Mr. Davis  that they had gotten away from the elevator and went to the cubicles? And again, that's not anything that Mr. Young disputes. So again, this is not something that Mr. Young would be trying to come in and refute. Again, his objection seems to be the effect that this had when the deciding official was turning things over in his mind. And that's something, the ultimate decision by Ms. Wadhams is something that he's not entitled to know until she makes the decision. Before you run out of time, I want to turn to the 404B problem. Like most judges here, I read the underlying decisions before I ever read the briefs to make sure that they're not mischaracterizing those underlying decisions. And I have to say that that point jumped out from the page. I mean, without even knowing what the case is about, when you have someone say, well, he did this before, this is the kind of conduct he's been known to engage in, so he must have done it now. Isn't that a classic violation of 404B and the board has adopted 404B? And I don't know how you get around that. Well, I would say two ways I get around that, Your Honor. I think there are two reasons why it's not a problem. That's a better way of saying it. First, because even if the court finds that that evidence should not have been considered, there's clearly still substantial evidence in support of the arbitrator's decision. Mr. Darr's testimony, which the arbitrator credited, constitutes alone substantial evidence that Mr. Young engaged in the misconduct. And then I would also say further that the arbitrator's decision, as frankly is often the case with arbitration decisions, is not necessarily laid out in such an explicitly linear line to see what he was looking at that evidence for. I think it's very arguable, as we pointed out in our brief, that he did not rely on evidence of Mr. Young's past conduct as evidence of his guilt here, but simply was commenting on it and then brought it back into play during the penalty. But if you look at the decision, the part of the decision where the arbitrator specifically lays out and says, this is the question before me, and that's on joint appendix page 10, the top paragraph, he says, the question of whether the griffin uttered those remarks to Mr. Darr is a question of this proceeding. And then he talks specifically about the testimony, Mr. Davis' testimony. He does talk about Mr. Young's belief in robust relationships, but then he turns immediately to Mr. Darr, and he says, there is no doubt, and I'm turning on to the top of page 11, there is no doubt that the grievant recognized Darr at the confrontational moment in the hallway. Darr heard the comments of the grievant. He repeated them verbatim on many occasions. And immediately, he demanded that the Federal Protection Services be called, because evidently, Darr, at that time, feared for his life. All right, well, what about the entire paragraph on page 11, page J-A-O-O-11? The entire full paragraph there talks about everything that he had done in the past, and says, this is a pattern of behavior, this is, I mean, he goes on at great length. I mean, that is quintessential. He does, Your Honor. But again, it seems to me that it's two things that it didn't matter when it filled the whole page of his very short opinion. Well, again, I would say two things. One is that he clearly has made the decision, even before he launches into that paragraph, when he says, there is no doubt, Darr heard the comments. He repeated them verbatim. He feared for his life. I would argue that he made the decision about Mr. Youngskill right at that point, because he credited Mr. Darr's testimony. And that even if the other evidence, I mean, I would argue that it's arguable about whether that played into his decision. But even if it did, Mr. Darr's testimony alone constitutes substantial evidence, even if this Court finds that the past conduct evidence should not have been admitted or considered. I don't have much time remaining, but I know one of the other main arguments that Mr. Young made was that he was removed actually from making a threat, rather than for the charge that was in the proposal and the decision letter, which was making an aggressive or intimidating statement. And specifically, I'll address the argument that he was removed for an offense in the table of penalties called making a threat. And I would like to draw the Court's attention to the fact that in the table of penalties, in fact, offense number six is not labeled making a threat, but is labeled threatening behavior. And describing behavior as threatening or characterizing it as threatening is not the same thing as charging an individual with making a threat. And I see that my time is up. Are there further questions? Thank you. Thank you. Do you have your argument? Yes. I think we had a minute or so left. Yeah. I'd just like to quickly run through some of the points the government made, with respect in particular to the notion that all that happened here was that the government was confirming and clarifying matters that were already in the record. That can't possibly be consistent with the testimony from Ms. Wadhams and Ms. Harvey that the newly gathered information was critical to the decision. If it were not critical to the decision, they would have said, well, no, we didn't really do a whole lot. All we did was confirm things that were already in the record. And that's not what they say. They say the new information was critical. And that is the very definition of new and material evidence that's laid out in ward that requires this Court to remand the matter back to the arbitrator. Just jumping quickly to the issue of the arbitrator's decision and the character evidence, the government, again, is trying to do two things. The government says that the arbitrator's decision is not linear, but then hangs its hat on the fact that one of those paragraphs came before the giant paragraph of character evidence. And it can't be both ways. If the decisions aren't so linear, that means the problem is more basic than that. They relied on character evidence for all of the reasons we set in our briefs that we requested the Court reverse and remand. Case is submitted. Thank both counsels.